THOMAS KANE AND WIFE MARTHA *v.* DENNIS McCARTHY AND WIFE MARY, and others.

The act of Congress of the 10th of February 1865, on Naturalization, by the expression " Any woman who might lawfully be naturalized under the existing laws, "—means only, any woman, *being a free white person, and not an alien enemy ; therefore,* where a descent was cast upon the 20th of May 1863, a woman who in 1857 had married in Ireland a naturalized citizen of the United States, could inherit, although she had always resided in Ireland, and continued to do so until after the descent cast.

In the same act, the expression, " Married or who shall be married to a citizen of the United States," casts a descent in the above case, upon a woman who, having been born an alien, in 1851 married another alien, who declared his intention to become a citizen in 1863, and was naturalized in 1856.

PARTITION of lands, tried in the Superior Court of WAKE, upon

demurrer to the complaint, by *Watts*, *J.*, at Chambers, on the 26th day of January 1869.

The complaint set forth that one John Kane, late a citizen of Wake county, died on the 20th of May 1863, seized of certain valuable real estate lying in said county; that his only heirs are the complainant Martha Kane, a sister, and the defendants other than McCarthy and wife, who are infant children of the McCarthys, Mrs. McCarthy being another sister of the deceased; that the infant defendants are natives of the United States, born at Newark in New Jersey; that the plaintiff Martha, is a free white woman, and a native of Ireland, and had always lived there until after the death of the said John Kane; that on the 28th of November 1867, when of full age, she married the plaintiff Thomas Kane, who at the date of such marriage was a naturalized citizen of the United States, and at that time upon a visit to Ireland; that Thomas Kane is a native of Ireland who emigrated to the United States in September 1848, and was duly naturalized at New York on the 18th of October 1855; that he returned temporarily to Ireland in 1857, and married the plaintiff Martha, and since then has continued to reside in Ireland, intending all the while, after accomplishing a temporary purpose, to return to this country.

It also set forth that the defendants McCarthy and wife, set up claims to the whole of said land, in right of the defendant Mary; that they are both natives of Ireland, and free white persons, the wife having lived in the United States since her infancy, and having been married to the said Dennis McCarthy in May 1851, at Newark in New Jersey; that her said husband was naturalized on the 3d of October 1856, having declared his intention to become a citizen on the 7th of January 1853.

The prayer was for an account from McCarthy and wife, who were alleged to have been in possession of the premises; for partition betwixt the infant defendants and the plaintiffs; and that McCarthy and wife be forever barred from all claim to said land, &c.

The defendants McCarthy and wife, and the infants, demurred severally.

His Honor sustained the demurrers, and dismissed the complaint; whereupon the plaintiffs appealed.

*Haywood*, for the appellants.

*W. H. Battle*, for the infants.

*Phillips & Battle*, for McCarthy and wife.

PEARSON, C. J. 1. " Persons heretofore born, or hereafter to be born, out of the limits and jurisdiction of the United States, whose fathers were or shall be at the time of their birth citizens of the United States, shall be deemed and considered and are hereby declared to be citizens of the United States. *Provided*, however, that the rights of citizenship shall not descend to persons whose fathers never resided in the United States."

2. " Any woman who might lawfully be naturalized under the existing laws, married, or who shall be married, to a citizen of the United States, shall be deemed and taken to be a citizen." Act of Congress, 10th February, 1855.

The right of the feme plaintiff, Martha Kane, to take by descent as one of the heirs at law of John Kane, depends upon the construction of the second section.

The wording of this section is very precise, and, as it seems to us, its meaning is too clear to leave much room for construction, or to call for much discussion.

What description of woman might lawfully be naturalized under the existing laws? That depends on the act of 1802, sec. 1, " Any alien, being a free white person, may be admitted to become a citizen of the United States, on the following conditions and not otherwise:" and there is a proviso that the person must not be an alien enemy. Martha Kane is a white woman, a native of Ireland, and was not an alien enemy, therefore she might lawfully have been naturalized under the existing laws, and answers the description required by the section under consideration; she was married to a citizen of the

United States, when the descent was cast, and was then, herself a citizen of the United States by force of the act of 1855, and takes as one of the heirs of her brother.

But it is said, Martha Kane had no residence in the United States, before or at the time of the descent cast; that is true, and it might be added, she never filed a declaration of intention—never took an oath to support the Constitution of the United States, or renounced her allegiance to the Queen of Great Britain, and there was no proof of her being a woman of good moral character, attached to the principles of the Constitution of the United States.

The reply is—these are conditions, which persons applying for naturalization *under the act of* 1802, are required to comply with, but there are no such conditions imposed by the act of 1855—it only requires that the woman should be one of such a description, as might be lawfully naturalized under the existing laws; and if she answers the description, the very object of the act was to dispense with all these requirements, and make her a citizen by the mere fact of her being married to a citizen of the United States. In other words, the wife of every citizen of the United States " is to be deemed and taken to be a citizen;" so that if a citizen marries an alien woman residing here, *ipso facto* she is a citizen also, without going through the forms required by act of 1802; or if he marries an alien woman residing in Ireland, *ipso facto* she is a citizen, and should he die without returning to the United States, she will take dower, or if he settles his land on her by will or otherwise, she will take and hold. The policy of the act of 1855, is to identify the wife with the husband in regard to *citizenship*, and thus to carry out the principles of the common law as to the relation of " Husband and wife."

Does the conclusion need confirmation ? It is furnished by the 1st section. The status of the father is made that of the child and on its birth, *ipso facto* it is a citizen of the United States without residence, declaration of intention—oath to support the Constitution—all being dispensed with; and the only limitation is that if the child never comes to reside in the United

States, the right of citizenship shall not descend to his children; and this section also puts a limitation upon the descent of citizenship to the children of a wife who never comes tó reside in the United States, so if her citizen husband · dies, and she marries an alien, her child by the second husband would not be a citizen, for it is confined to children, whose *fathers* are citizens.

On the argument our attention was called to 7 & 8, Victoria, "Any woman married or who shall be married to a natural-born subject or person naturalized, shall be deemed and taken to be herself naturalized and have all the rights and privileges of a natural born subject." It is clear the Act of 1855 was taken from this statute, and it was asked, Why change the wording, and instead of "any woman," use the paraphrase "any woman who might lawfully be naturalized under the existing laws," if the operation of the act was to be as broad and sweeping as that of Victoria? It is not seen how this can have much effect upon the argument—but the solution is easy. The act of 1802 does not make *any woman* capable of being naturalized, so it was necessary to make some change by adding the words "free *white* woman, or some equivalent expression; and the history of parties in 1855 fully explains why this equivalent expression was adopted instead of "free *white* woman," for at that time an angry contest was going on in reference to the words "all men are born free and equal," and a formidable party took the ground that the act of 1802 was in violation of the Declaration of Independence, in so far as it attempted to exclude from citizenship all who were not "free *white* persons." If the words "free white," had been left out, the bill would have met with opposition from the South, and if these words had been expressed it would have met with opposition at the North, so the reason for adopting an expression, which leaves that question open, is obvious.

Having settled the right of Martha, the right of her sister Mary can be settled in few words.

Mary was a resident of the United States at the time of her

marriage. In this, seemingly, she has the advantage of Martha, but her husband was not a citizen of the United States at the time of her marriage. In this, seemingly, Martha has the advantage of her. But in fact they both stand on the same footing, for it is not the ceremony of marriage, or its time or place, but it is the fact of being " married to," that is being the wife of, a. citizen that makes the wife, a citizen,—that makes the woman a citizen. • The circumstance that her husband was not a citizen at the time of marriage, is wholly immaterial, for he became a citizen afterwards *ipso facto*. So she being a free white woman married to a citizen, comes within the description, and the very words of the act of Congress " and is. deemed and taken to be a citizen;" for it is the status of being married to—being the wife of a citizen—that makes her one. It can in no possible view make any difference, whether the marriage ceremony is performed first, and then the husband becomes a citizen, or whether he becomes a citizen first,• and the marriage afterwards takes place. Whenever the two events concur and come together, " she is a woman married to a citizen."

The thing seems to us too plain to admit of discussion—it is. like trying to prove that two added to two makes four. Mary is entitled to the other moiety, and the defendants' two children are excluded.

There is error. Judgment reversed, and judgment that plaintiff recover an undivided moiety of the lands mentioned in the pleadings, and that partition be made between the plaintiff Martha and the defendant Mary.. To this end it is. referred to the Clerk to enquire, whether a sale will be necessary for the purpose of partition; and an account will be taken of the rents and profits. The plaintiff will have judgment for costs.

*Burton* v. *Burton*, 26 Howard Pr. Reports 474. *Ludlam* v. *Ludlam*, 31 Barbour 487, cited on the argument, received due consideration by the Court.

PER CURIAM.                    Judgment reversed.