Mr.' Justice DAYIS
 

 delivered the opinion of the court.
 

 The only question that arises in this ease, which it is competent for this court to decide, is, whether'the act of the legislature of Kentucky, passed on the 4th day of April, 1861, is repugnant to the Constitution of the United States, because it impairs the obligation of a contract.
 

 If the legislature had the power to release to the defendants in error the right of the State to the property in controversy, both common justice and the good name of the commonwealth demanded the exercise of. that power, under the circumstances of this case. It appears that the afiairs of the old Bank of Kentucky were substantially under the control of the State when the house and lot were seized as the property of Barry, and sold. The purchasers at that sale had a right to conclude that the State would never interfere to their prejudice, and no other party could, if Brindley died without heir,s. The legislature, after the facts were known, would have been guilty of a great wrong, if they had refused to pass an act to give validity, as far as it
 
 *490
 
 had power to do so, to a sale of which the. State derived the benefit.
 

 • The general power of the legislature to grant to individuals the lands belonging to the State is not denied; but it is claimed there was a restraint in this instance, on account of the previous contract, concerning the property, between the auditor and Monroe.
 

 It is charitable to suppose that the auditor would never have employed Monroe to dispossess the Corbius, had he known the manner in which they acquired possession, and that his proceedings were prompted by a commendable zeal for the true interests of the State.
 

 ■ But, after all, did the contract with Monroe have the effect claimed for it by the plaintiff in error? It.certaihly did not vest in him the title'to the property. If, as is admitted, the auditor had the authority to contract with an attorney-at-law to give him one-half the escheated estate, as compensation for its recovery, still, this contract did not confer on him a license to sell the property after.it was recovered, or to make any disposition of it that would bind the government.
 

 The legislature had intrusted the management of escheated ¡property with bonded officers, and confided to them the exclusive power of selling, under the written directions of the auditor.
 
 *
 
 In no other mode could the legal title of the State be divested, and it nowhere appears that Baxter, in whose name the.suit against the.Corbins was prosecuted, and who was the agent for escheated estates in Fayette County, where’ the property is situated, was a party to the sale to Mulligan, or that he ever sanctioned it. Viewing the transaction in the aspect most favorable to Mulligan, it is apparent that his rights, under this contract, are those which belonged to Monroe, find that he has '• no other or better rights than Monroe had. The case, then, resolves into this question : what were the rights of Monroe, and how aré they affected by the act of the legislature? The answer to this question is very plain, and relieves the- proceeding of any difficulty. ,
 

 
 *491
 
 When the escheat was perfected, the legal title to the entire property was vested in the
 
 State;
 
 but as the State, through its auditor, had bargained with Monroe to concede a moiety to him for his services, it .follows that the State was under obligations to convey, in some proper form, this moiety to him. This left the State the undisputed owner of one-half the property, with such power of disposition as the legislature, in its wisdom, should see proper to give it. The act in question does not attempt to interfere with any privilege which belonged to Monroe, and wo have no right to presume it was passed with' any such intention. It does not profess to grant to .the Corbins any particular estate, but simply releases tQ them whatever interest the State had to the property they occupied, and as the State undoubtedly had an interest in it to the extent of one moiety, how can it be said that the obligation of the contract between the auditor and Monroe was impaired bj7 this statute?
 

 The statute operated rightfully on1 the moiety owned by the State, and there' is no authority for saying the legislature meant to do anything more.
 

 It is not our province to decide any other point in this case, and as the act of the legislature of Kentucky does, not, either in terms or by necessary implication, impair the obligation of the auditor’s contract with Monroe, it follows that the judgment of the Court of Appeals must be
 

 Aeeirmed.
 

 *
 

 1 Stanton’s Statutes of Kentucky, chap. 34, p. 459.