## LEONARD *v.* GRANT.

(*Circuit Court, D. Oregon.* December 15, 1880.)

1. PLEA TO THE JURISDICTION.—The beginning and conclusion of.

2. ALIEN WOMEN—MARRIAGE OF TO A CITIZEN.—Under section 2 of the act of February 10, 1875, (section 1994, Rev. St.,) an alien woman of the race or class of persons that are entitled to be naturalized under existing laws, who is married to a citizen of the United States, becomes by that act a citizen of the United States; and such admission to citizenship has the same force and effect as if such woman had been naturalized by the judgment of a competent court.

3. SAME.—The clause in the statute aforesaid, "might herself be lawfully naturalized," does not require that the woman shall have the qualifications of residence, good character, etc., as in case of admission to citizenship in a judicial proceeding, but it is sufficient if she is of the class or race of persons who may be naturalized under existing laws.

Action at Law.

*C. J. MacDougall,* for plaintiff.

*George H. Durham,* for defendant.

DEADY, D. J. This action is brought by the plaintiff, the widow of the late D. G. Leonard, against the defendant, as administrator of his estate, to recover the sum of $624.30, with interest, the same being the one-third of the rents and profits of the real property of the deceased, in which the plaintiff was entitled to dower, received by the defendant as such administrator between the death of said Leonard, on January 16, 1878, and the sale of said property by the defendant, on February 22, 1879.

The plaintiff alleges that she is a citizen of the republic of Switzerland and an alien, and that the defendant is a citizen of Oregon.

The answer of the defendant denies that the plaintiff is a citizen of Switzerland and an alien, and avers that she is now, and long since, and prior to January 16, 1878, has been, a citizen of the United States and of Oregon.

By the stipulation of the parties the cause was submitted to the court for trial upon the issue made by this plea and the admissions in such stipulation, which are: (1) That the plaintiff is a native and citizen of the republic of Switzerland; (2) that D. G. Leonard was a citizen by birth of the United States, and at his death, and for 20 years prior thereto, was a citizen of Oregon; (3) that the plaintiff was married to said Leonard in Oregon on July 19, 1875, and lived with him therein, as his wife, until his death, and still resides here.

The matter contained in the answer is doubtless intended as a plea to the jurisdiction, but no such or other application is therein made of it. It does not commence with the usual allegation that the court ought not, on account of the fact stated in the plea, to take cognizance of the action, nor conclude with the proper prayer—*si curia cognoscere velit*—whether the court will take cognizance of the action, (3 Chit. 894,) but with a prayer for a judgment for costs and disbursements, which is superfluous and improper in any action, as they are given or withheld as an incident of the action, and according to the final judgment in the case.

One of the admissions in the stipulation is that the plaintiff is a native and citizen of Switzerland. If this be taken as literally true, then there is no doubt but that this court has jurisdiction of the action; but, taken in connection with the rest of the stipulation and the argument of counsel, I suppose it may be regarded as an inadvertence, and as intended only as an admission that she was such citizen by birth and until the time of her marriage.

These preliminary matters being disposed of, the case turns upon the decision of the question, is the plaintiff a citizen of the United States? and this depends upon the construction to be given to section 2 of the act of February 10, 1855, (19 St. 604; section 1994, Rev. St.,) which reads in the

latter as follows: "Any woman who is now or may hereafter be married to a citizen of the United States, and might herself be lawfully naturalized, shall be deemed a citizen."

The plaintiff being an alien entitled to be naturalized, and having married a citizen of the United States, the defendant contends that she is within the purview of this statute, and therefore a citizen of the United States; to which the plaintiff replies that she was never absolutely a citizen of the United States, but was only "deemed" to be such citizen by force of the statute; that is, was only taken, considered, or supposed to be one because she became the wife of a citizen, which assumption or supposition ceased with the fact upon which it was based—the termination of the relation or state of marriage between her and her late husband.

The American statute is substantially a copy of the British one of 7 and 8 Vict. *c.* 66, § 16, 1844, which provides "that any woman married, or who shall be married, to a natural-born subject or person naturalized, shall be deemed and taken to be herself naturalized, and have all the rights and privileges of a natural-born subject."

In *Regina* v. *Manning*, 2 Carr. & Kir. 886, (61 Eng. C. L.,) it was held under this statute that a Swiss woman married to an English subject was not entitled to be tried by a jury *de medietate linguæ*, as provided in the case of aliens, in 28 Edw. III. *c.* 13, and Geo. IV. *c.* 50, § 47, upon a charge of murder.

In considering the British statute, *Pollock*, C. B., after citing it, said: "The obvious, plain, and natural inference from that appears to me to be that she should be considered exactly as if she had been naturalized by act of parliament, or as if she had been a natural-born subject." And *Wilde*, C. J., in delivering the opinion of the court in the exchequer chamber, whither the cause had been reserved for "the consideration of the judges upon the question, ' was the female prisoner entitled to a jury *de medietate linguæ* ? ' " said: "It appears to me that the general intention of the legislature in this act of Victoria is to make the woman a British subject. * * * With respect, therefore, to the prisoner, we can dis-

cover no intention whatever in this act of parliament to do more or less than to make her a British subject."

The only decisions which have been found under the American act are *Burton* v. *Burton,* 1 Keys, 359, and *Kelly* v. *Owen,* 7 Wall. 496. In the first case it was held, in the language of the syllabus, that "the alien widow of a natural-ized citizen of the United States, although she never resided in the United States during the life-time of her husband, is entitled to dower in his real estate," and this, not upon the ground that a state law gave an alien woman, situate as the plaintiff was, dower in the lands of her husband, but because, under and by force of the act of 1855, *supra,* she became, upon the naturalization of her husband, an American citizen, and was entitled as such citizen to dower in her husband's lands after his death, although she was married in 1823, and her husband was not naturalized until 1840, and she was never in the United States until after his death.

In the second case, it is only expressly decided that an alien woman who marries an alien, who subsequently becomes an American citizen, is within the purview of the act, as well as if her husband had been a natural-born citizen, or natural-ized before the marriage, and therefore she is an American citizen from and after the naturalization of her husband.

In delivering the opinion of the court Mr. Justice Field says: "The terms 'married,' or 'who shall be married,' do not refer, in our judgment, to the time when the marriage is celebrated, but to a state of marriage. They mean that, whenever a woman, who under previous acts might be natural-ized, is in a state of marriage to a citizen, whether his citizen-ship existed at the passage of the act or subsequently, or before or after the marriage, she becomes by that fact a citizen also. His citizenship, whenever it exists, confers, under the act, citizenship upon her. * * * Its object, in our opinion, was to allow her citizenship to follow that of her husband, without the necessity of any application for naturalization on her part."

In 2 Bish. Law M. W. § 505, it is said of this statute "that, by the very act of marriage, citizenship is conferred on a

woman who by previous laws was capable of becoming naturalized. His citizenship conferred citizenship on her." And in *Kane* v. *McCarthy*, 63 N. C. 299, it was held, according to the U. S. Digest, vol. 3, p. 308, "that a white woman, a native of Ireland, and not an alien enemy, who marries a citizen of the United States, is a citizen of the United States, although she always resided in Ireland."

While it may be admitted that none of these authorities expressly decide the point now made by the plaintiff, to-wit, that the citizenship imputed to the wife by that of the husband is a qualified one, and continues no longer than the reason of it—the marriage with a citizen—still, it is also true that there is not even a hint or doubt in any of them that the citizenship of the wife thus acquired is a qualified or contingent one, while the language used in all of them is only consistent with a citizenship as enduring and unqualified as if the wife had been actually naturalized upon her own formal application by the judgment of a competent court.

In *Regina* v. *Manning* it is said, "she should be considered exactly as if she had been naturalized by act of parliament, or as if she had been a natural-born subject;" and in *Kelly* v. *Owen*, "his citizenship, whenever it exists, confers, under the act, citizenship upon her." Besides, in this case, one of the parties that was considered, apparently without question, to be a citizen, was the widow of Miles Kelly, who was herself an alien born, and married to her deceased husband before he was naturalized. So, in *Burton* v. *Burton*, the widow of the deceased naturalized citizen, although never in the United States until after her husband's death, was held to be a citizen without an intimation from court or counsel that such citizenship terminated with the existence of the marriage; and this decision is cited with approbation by the supreme court in *Kelly* v. *Owen, supra.*

It is also argued by counsel for the plaintiff that it is not to be presumed that congress would naturalize an alien woman absolutely, without her consent, and therefore the act should be construed as only intended, as a matter of convenience, to give her the *status* of a citizen during her mar-

riage to a citizen. But the answer to this argument is found in the fact that an alien woman who marries a citizen of the United States must be presumed to assent to the obligations, duties, and *status* which the law provides shall be consequent upon the act of entering into such relation.

No law expressly providing for a temporary or contingent citizenship is known to the legislation of the United States, and so unusual and singular a purpose ought not to be attributed to congress without an explicit provision to that effect. The language of the statute in question, taken in its most natural and apparent sense, conferred citizenship upon the plaintiff on her marriage with Leonard, and there is nothing in it, or the nature or circumstances of the case, to warrant the conclusion that congress thereby only intended to confer upon her a qualified citizenship—a citizenship during marriage.

The phrase, "shall be deemed a citizen," in section 1994, Rev. St., or as it was in the act of 1855, *supra*, "shall be deemed and taken to be a citizen," while it may imply that the person to whom it relates has not actually become a citizen by the ordinary means or in the usual way, as by the judgment of a competent court, upon a proper application and proof, yet it does not follow that such person is on that account practically any the less a citizen. The word "deemed" is the equivalent of "considered" or "judged;" and, therefore, whatever an act of congress requires to be "deemed" or "taken" as true of any person or thing, must, in law, be considered as having been duly adjudged or established concerning such person or thing, and have force and effect accordingly. When, therefore, congress declares that an alien woman shall, under certain circumstances, be "deemed" an American citizen, the effect, when the contingency occurs, is equivalent to her being naturalized directly by an act of congress, or in the usual mode thereby prescribed.

There is another question in this case that is not so easy of solution. An alien woman who marries a citizen of the United States does not thereby become an American citizen, unless, at the time, "she might herself be lawfully natural-

ized," also. To entitle the plaintiff to become naturalized at the time she was married to Leonard, on June 19, 1875, she should have been: *First,* a free white person, or a person of African descent or nativity; *second,* she must have resided within the United States five years; *third,* she must have been of good moral character, attached to the principles of the constitution of the United States, and well disposed to the good order and happiness of the same; and, *fourth,* she must have renounced all titles or orders of nobility, if any she had.

If, whenever during the life of the woman or afterwards, the question of her citizenship arises in a legal proceeding, the party asserting her citizenship by reason of her marriage with a citizen must not only prove such marriage, but also that the woman then possessed all the further qualifications necessary to her becoming naturalized under existing laws, the statute will be practically nugatory, if not a delusion and a snare. The proof of the facts may have existed at the time of the marriage, but years after, when a controversy arises upon the subject, it may be lost or difficult to find.

The marriage is a public act, of which the law takes cognizance and preserves the evidence, and the race of the woman is, generally, a fact susceptible of proof; but beyond this it would be very difficult, if not impossible, to establish, after the lapse of any considerable time, the facts showing her right to become naturalized under the then-existing laws.

In *Kelly* v. *Owen, supra,* the question does not appear to have been discussed or considered, but it was assumed that race was the only one of these qualifications that it was necessary for the woman to possess at the time of her marriage —in other words, that, as the law then stood, she "should be 'a free white person,' and not an alien enemy;" and it appeared affirmatively that one of the parties who was held to be a citizen, Margaret Kahoe, had not the qualification of residence, because she was only two years in the United States when she was married, and only four years therein when her husband became naturalized. In *Burton* v. *Bur-*

v.5, no.1—2

*ton, supra,* the woman was never in the United States until after the death of her husband, and in neither case does it appear that there was any evidence that the women held to be citizens, by reason of their marriage with citizens, possessed the qualifications of good moral character, attachment to the principles of the constitution, and disposition to the good order and happiness of the United States. The reasonable inference is that, notwithstanding the letter of the statute, "might herself be lawfully naturalized," the supreme court considered that it was only necessary that the woman should be a person of the class or race permitted to be naturalized by existing laws, and that in respect to the qualifications arising 'out of her conduct or opinions, being the wife of a citizen, she is to be regarded as qualified for citizenship, and therefore considered a citizen. And, tried by this test, it is quite likely that she will be found as well qualified, personally, as her husband, or the thousands of poor, ignorant, and unknown aliens who are yearly admitted to citizenship, in the larger centers of foreign population, by the local courts of practically their own creation.

The stipulation in this case is silent as to the qualifications of the plaintiff, except that she is a native of Switzerland, and was married to an American citizen in 1875, and has since resided in Oregon; and, if it must appear affirmatively that she possessed the qualifications at the time of her marriage to entitle her to naturalization, then it does not appear that she is or ever was a citizen of the United States. Indeed, it does not appear certainly that she belongs to the class or race of persons who "might be lawfully naturalized;" for, although she is a native of Switzerland, it does not follow from that fact that she is either a free white person, or one of African descent or nativity. But, on the argument; it was practically admitted that she was a free white person, and the stipulation may be amended in this respect accordingly. As to the other qualifications, my conclusion is, upon the authorities and the reason, if not the necessity of the case, that the statute must be construed as in effect declaring that an alien

woman, who is of the class or race that may be lawfully naturalized under the existing laws, and who marries a citizen of the United States, is such citizen also.

Upon this construction of the act, and the assumption that the plaintiff is a "free white person," she is a citizen of the United States, and has been ever since her marriage to Leonard, and there must be a finding of fact and law for the defendant accordingly.