Corlett, J.
— The defendant, Michael Newell, was born in Ireland of Irish parents on the 31st day of July, 1848. His father and mother emigrated to the United States in 1850 or *9 1851. The defendant came over soon after in charge of a relative of the family. On the 13th day of May, 1856, his father was accidentally killed on a railroad in the city of Buffalo. For some time before his death he had resided with his family, including the defendant, in Saratoga county. On the 13th day of August, 1861, the defendant’s mother married Thomas Beagan, who was then an alien. Afterwards and on the 4th day of October, 1864, said Thomas Beagan was duly naturalized in the superior court of Buffalo. The defendant at that time was sixteen years of age, residing with his mother and her husband in Buffalo, where he has so continued to reside ever since, and has always been a resident of the state of New York ever since he came from Ireland.
Section four of chapter 359 of the Session Laws of 1883, which took effect on the first Monday of May of that year, is as follows : “ Immediately after this act shall take effect, the
mayor of said city shall appoint two citizens of said city, one from each of the two principal political parties, as commissioners of police, and in all appointments hereafter made the non-partisan character of said board shall be preserved and maintained. The said commissioners shall be electors and residents of the city of Buffalo, and before entering upon the duties of their office shall subscribe and take before the city clerk of the city of Buffalo the oath required by the constitution for judicial officers, which oath shall be filed in the office of the said city clerk. The commissioners shall hold their office for the term of four and six years respectively, and until their successors shall be qualified and enter upon the duties of their office. The mayor shall designate the term for which said commissioners are appointed, and the commissioner having the longest term to serve shall be known as the acting commissioner.”
Under this act, John B. Manning, who was then mayor of the city of Buffalo, appointed two commissioners, one of whom was the defendant, and designated his term as the longest; so that he became known as the “ acting commis *10 sioner.” Under this appointment the defendant took the proper oath and entered upon the discharge of the duties of his office, and has since acted in that capacity and received the emoluments of the office. The people challenge the defendant’s title to the office upon the claim that he was and is not a citizen of the United States, and therefore ineligible, and an intruder. The defendant’s contention is that the above facts establish his citizenship and elegibility. A determination of this case requires an examination of the following provisions of the United States Revised Statutes :
Seo. 1994. “ Any woman who is now or may hereafter be married to a citizen of the United States, and who might herself be lawfully naturalized, shall be deemed a citizen.”
Seo. 2172. “ The children of persons who have been duly naturalized under any law of the United States, or who previous to the passing of any law on this subject by the government of the United States, may have become citizens of any one of the states under the laws thereof, being under the age of twenty-one years at the time of the naturalization of their parents, shall, if dwelling in the United States, be considered as citizens thereof, and the children of persons who now are or have been citizens of the United States, shall, though born out of the limits and jurisdiction of the United States, be considered as citizens thereof. But no person heretofore proscribed by any state, or who has been legally convicted of having joined the army of Great Britain during the revolutionary war, shall be admitted to become a citizen without the consent of the legislature of the state in which such person was proscribed.”
Sec. 2167. “ Any alien, being under the age of twenty-one years, who has resided in the United States three years next preceding his arrival at that age, and who has continued to reside therein to the time he may make application to be admitted a citizen thereof, may, after he arrives at the age of twenty-one years, and after he has resided five years within the United States, including the three years of his minority, *11 be admitted a citizen of the United States without having made the declaration required in the first condition of section 2165. But such alien shall make the declaration required therein at the time of his admission, and shall further declare on oath, and prove to the satisfaction of the court, that for two years next preceding it has been his bona fide intention to become a citizen of the United States, and he shall in all other respects comply with the laws in regard to naturalization.”
Section 1994 was enacted on the 10th day of February, 1855. Section 2172 was approved on the 14th day of April, 1802, and section 2167 was reproduced from an act passed on the 26th day of Hay, 1824. All of them were made a part of the Bevised Statutes enacted on the 20th day of June, 1874. Section 1994 was considered and construed in December, 1868, by the supreme court of the United States in Kelly agt. Owen (7 Wallace, 496). It there appeared that one Miles Kelly, a native of Ireland, emigrated to the United States and settled in the District of Columbia. In 1853 he married Ellen Duffy, and in 1855 was naturalized. He died in the city of Washington in March, 1862, intestate and without issue, leaving considerable real estate. His widow Ellen survived him. She had two sisters. Ellen Owen, who arrived in the United States in 1856 and was married to Edward Owen in 1861. He was naturalized in 1835, and Margaret Kahoe, who arrived in the United States in 1850, married James Kahoe in 1852, and he was naturalized in 1854. It thus appears that the husbands of two of the sisters were naturalized after their marriage, and the other before her marriage. The controversy was between the widow and her two sisters in relation to the real estate left by Duffy. The court decided that the act conferred the privilege of citizenship upon women married to citizens of the United States, if they were of the class of persons for whose naturalization previous acts of congress provided, and that the term “married” did not refer to the time when the ceremony of marriage was celebrated, but to a state of marriage. That it was therefore immaterial whether the husband became *12 a citizen after or before his marriage. In the one case the one became a citizen when she married; in the other, when her husband became naturalized. The facts in that case rendered it necessary for the court to decide the question, as the naturalization in two cases was after the marriage, and in one case before. The words “ who might herself be lawfully naturalized ” mean any woman being a free white person, and not an alien enemy (Kane agt McCarthy, 63 N. C., 299; Leonard agt. Grant, 5 Federal Rep., 11; Peguignot agt. The City of Detroit, 16 Federal Rep., 211.)
In Burton agt. Burton (1 Keyes, 359), decided in 1864, it was held that the alien widow of a naturalized citizen of the United States, although she never resided within the United States during the lifetime of her husband, was nevertheless a citizen and entitled to dower in his real estate. The doctrine of the above cases has been uniformly recognized and acted upon by the courts of this state (Luhrs agt. Eimer, 80 N. Y., 171; affirming, 15 Hun, 399; Renner agt. Müller, 57 How. Pr. R., 229 ; Weiland agt. Renner, 65 id., 245).
It is therefore settled beyond controversy that the defendant’s mother became a citizen of the United States on the 4th day of October, 1864, on the naturalization of her husband, Thomas ¡Reagan. The question of the effect of his mother’s citizenship upon the defendant will now be considered. In Campbell agt. Gordon and wife (6 Cranch’s R., 176), decided in the supreme court of the United States in February, 1810, it appeared that James Curry, a citizen of Virginia, died on the 23d day of April, 1807, intestate and without issue, leaving ' considerable real estate. His brother, William Curry, was a subject of the king of Great Britain, but prior to the 14th day of October, 1795, he became a resident of the United States, and on that day was naturalized. He had one daughter, Janette, who was born in Scotland but came to the United States in October, 1797, while an infant, during the life of her father, and that she afterward continued to reside in Virginia. It became necessary to decide whether she was a citizen capa *13 ble of taking her uncle’s land by inheritance. The court unanimously determined the question in her favor, holding that the naturalization of her father while she was an infant made her a citizen.
In The United States agt. Keller (13 Federal Rep., 82), decided by the circuit court of the United States in Illinois in 1882, it appeared that Keller reached his majority on the 22d day of May, 1880, and was entitled to vote at the election for representative in congress held in November, 1880. He possessed the requisite qualifications prescribed by the laws of Illinois as to residence. He voted at that election and was aftérwards indicted upon the claim that he was not a citizen of the United States, which was necessary to make him a voter. His parents were subjects of Prussia, the father dying there in 1865 without ever having been in this country. After-wards his mother removed to the United States, bringing her infant son, the defendant, with her. In 1868 she married Michael Graschka, a naturalized citizen. Keller’s contention was that being an infant at the time of his mother’s marriage to a citizen, that he became a citizen when she did. The question was carefully considered. Justice Harlan of the supreme court writing the opinion, Treat, the district judge, concurring, and it was determined that the mother’s marriage to a citizen made her infant son such; that he was a legal voter, and his discharge was ordered. That case was precisely like the one now under consideration. It has been already shown that whether the naturalization of the husband was after or before the marriage, was immaterial. Newell’s mother became a citizen while he was an infant, and the above case decides that he became such at the same time as his mother. He was therefore eligible to receive the appointment. The subject of naturalization and citizenship is within the exclusive jurisdiction of the United States. The states in their individual capacity have no concern with or power over those matters. It is a familiar rule that when the questions to be determined arise under the United States statutes, that the state courts are *14 bound by and must follow the rulings of the federal courts on those questions (Duncombe agt. N. Y. H. & N. R. R. Co., 84 N. Y., 190). So, too, the construction placed upon the statutes of another state by the courts of that state, are controlling in the courts of this state (Leonard agt. Columbia Steam Navigation Co., 84 N. Y., 48). The questions are therefore settled in favor of the defendant by authority. I)ut in the absence of adjudications, and as an original question, it is difficult to see how a different result could be reached.
Section 2172, above quoted, provides for children becoming citizens “ at the time of the naturalization of their parents! The word “ parents ” technically includes both father and mother, but it has always been assumed without controversy that the naturalization of the father made his minor child a citizen, and it was so adjudged in the early case of Campbell agt. Gordon (supra). If he is dead and the mother is the only remaining parent, no reason is perceived why the mother’s becoming a citizen should not have the same effect on the child as the father’s becoming one. The intent of the statute and the end to be attained, must always be taken into consideration in construing it (Mead agt. Stratton, 87 N. Y., 493 ; Schlegel agt. The American Beer Co., 12 Abb. N. C., 280; Dinkel agt. Hathaway, 11 Hun, 570; People ex rel. Supervisors of Richmond agt. Hopkins, 2 Sup. Ct. [T. & C.], 586). It is very clear that any other construction might work great mischief. The father is dead; the mother becomes a citizen ; she may be the owner of property; her children may desire to visit foreign countries while still infants, and if her becoming a citizen does not inure to their benefit and work in their favor the same result, they would be entirely without remedy or protection until they attained their majority, for the law makes no provision for making them citizens except through their parents, until they are of full age. It might follow that if the mother died her children would fail to inherit her real estate. It might escheat or pass into the hands of strangers (Hall agt. Hall, 81 N. Y., 130). So, too, if they temporarily visit a *15 foreign country they would be deprived of the protection and consideration involved in being American citizens. Congress could never have intended to pass an act which could be so construed as to work such results. It is not necessary to determine whether the naturalization of the husband is also the naturalization of the wife upon the common-law theory that they are but one person; or whether she becomes a citizen by virtue of the statute. For no importance can be attached to the mode in which she becomes a citizen. It is enough that a certain event which has happened makes her one. In Leonard agt. Grant (supra), it was decided, among other things, that a woman who is married to a citizen of the United States becomes such by that act, and that such admission to citizenship has the same force and effect “ as if such, woman had been naturalized by the judgment of a competent court.” The learned counsel for the plaintiff in their brief suggest that “ naturalization is a matter of record; a judgment of a court upon evidence.” This is so where the statute has so declared, but in the case of infants and women the statutes declare that they may become citizens under certain circumstances, without any judgment or record. There are also numerous other cases where no record is required. When Louisiana, Florida and Texas were admitted into the union, the citizens of those states or territories were made citizens of the United States without the judgment of any court and without the action of any of their citizens. So, too, the civil rights bill made citizens of all negroes born in this country who had been slaves ( United States agt. Rhodes, 1 Abb. U. S. R., 28).
The same is true of the treaty of peace of 1783 between Great Britain and the United States. In Shanks agt. Pont (3 Peters, 247),The supreme court of the United States speak on this subject as follows: “ During the war each party claimed the allegiance of the natives of the colonies as due exclusively to itself. The Americans insisted upon the allegiance of all born within the states respectively, and Great Britain asserted *16 an equally exclusive claim. The treaty of 1783 acted upon the state of things as it existed at that period. It took the actual state of things as its basis. All those whether natives or otherwise who then adhered to the American States were virtually absolved from their allegiance to the British crown, and those who then adhered to the British crown were deemed and held subjects of that crown. The treaty of peace was a treaty operating between the states on each side, and the inhabitants thereof; in the language of the seventh article it was a ‘ firm and perpetual peace between his Britannic majesty and the said states, and between the subjects of one and the citizens of the other! Who then were subjects or citizens was to be decided by the state of facts. If they were originally subjects of Great Britain and then adhered to her and were claimed by her as subjects, the treaty deemed them such. If they were originally British subjects but then adhering to the states, the treaty deemed them citizens.” It thus appears that citizens may be created by acts of congress, treaties and the judgments of courts. There can be no room for doubt as to the proper disposition of this case. The complaint must be dismissed and judgment ordered for the defendant.