### Ex parte GRAYSON.

(District Court, W. D. Washington, N. D. July 17, 1914.)

#### No. 2780.

ALIENS (§ 53*)—NATURALIZATION—"PERSONS LAWFULLY NATURALIZED"—DEPORTATION.

Rev. St. § 1994 (U. S. Comp. St. 1901, p. 1268), provides that any woman who is now or may hereafter be married to a citizen of the United States, and who "might herself be lawfully naturalized," shall be deemed a citizen. Held, that the clause, "who might herself be lawfully naturalized," refers to the race, class, or nation of persons who are excluded from citizenship, and not to personal qualifications or character of the individual whose class or race is not excluded; and hence where, pending proceedings to deport an alien native of France as an alien prostitute, she was married to a citizen of the United States, she thereby became a citizen, and was not subject to deportation by the Department of Labor until her citizenship was revoked by due process of law.

[Ed. Note.—For other cases, see Aliens, Cent. Dig. § 112; Dec. Dig. § 53.*]

Petition for a writ of habeas corpus by Marie Robina Grayson. Writ granted.

Noah Shakespeare and Louis A. Merrick, both of Everett, Wash., for petitioner.

George P. Fishburne, Asst. U. S. Atty., of Tacoma, Wash., for the United States.

NETERER, District Judge. On January 23, 1914, the acting Secretary of Labor ordered the petitioner, who was born at Tridon, Bretagne, France, and who landed at the port of New York in 1903, to be deported for being in the United States in violation of the act of Congress approved February 20, 1907 (34 Stat. 898, c. 1134 [U. S. Comp. St. Supp. 1911, p. 499]), and amendments thereto, in that the petitioner "is a prostitute and has been found practicing prostitution subsequent to her entry into the United States." The petitioner thereupon applied to this court for a writ of habeas corpus, on the grounds: (a) That the petitioner is now, and at all times since the 1st day of April, 1912, has been, a citizen of the United States, she having on that date been united in lawful wedlock to William Grayson, a native-born citizen of the United States, and that the department is without jurisdiction to order her deportation; and (b) that she "was denied a fair and impartial hearing."

---

*For other cases see same topic & § NUMBER in Dec. & Am. Digs. 1907 to date, & Rep'r Indexes
215 F.—29

It was admitted upon the hearing that William Grayson is a native-born citizen of the United States, and that on the 1st day of April, 1912, he was united in lawful wedlock with the petitioner, in the city of Portland, Or. It is alleged in the answer of the Commissioner of Immigration:

That "a warrant was issued for the petitioner, and she was arrested on the 14th of March, 1912, on a charge of having been found practicing prostitution; that testimony was taken in the case on March 27, 1912, and she was on the same day released on bond; that she was married April 1, 1912, to the best knowledge, opinion, and belief of the respondent, to prevent being deported; that at the time of her marriage to the said William Grayson she was a prostitute and was practicing prostitution; that she was still out on bond when she was married, and was not released until the 9th day of April, 1912; that she has never been formally admitted to the United States, and never has been naturalized; and that she should be deported as ordered by the Secretary of Labor, after a due hearing."

The testimony taken before the Commissioner of Immigration shows that the petitioner was accorded a fair and impartial hearing, and further shows that the petitioner has been practicing prostitution for nine years last past, except during the time she lived with her husband and for one month prior to her marriage, in various cities, from Nome, Alaska, to San Francisco, and as far east as Salt Lake, and that she met William Grayson, her husband, in a sporting house in Portland, Or. She lived with him "nearly seven months" after marriage, and upon her husband leaving her, she says, "I went back rustling again." There is no evidence, either before this court or in the record, that the petitioner was a prostitute on entering the United States, or that she came for the purpose of practicing prostitution.

The petitioner contends that since the dawn of civilization the domicile and citizenship of the wife became merged in that of the husband, and that such status was recognized by the common law of England prior to George III, and became part of the fundamental law of the United States, and a definite and fixed status by congressional enactment under section 1994, Revised Statutes of the United States (U. S. Comp. St. 1901, p. 1268), which provides that:

"Any woman who is now or may hereafter be married to a citizen of the United States, and who might herself be lawfully naturalized, shall be deemed a citizen."

By this provision, the very act of marriage, it is contended, confers citizenship as fully to all intents and purposes as could be done by decree of naturalization.

The respondent asserts that the language, "who might herself be lawfully naturalized," excludes the petitioner from acquiring the franchise of citizenship, because section 2 of the act of 1907, as amended by Act March 26, 1910, c. 128, § 1, 36 Stat. 263 (U. S. Comp. St. Supp. 1911, p. 500), excludes "prostitutes, or women or girls coming into the United States for the purpose of prostitution or for any other immoral purpose"; and section 3 provides that "any alien who shall be found * * * practicing prostitution after such alien shall have entered the United States * * * shall be deported * * *"; and the petitioner, being a prostitute, could not be lawfully naturalized.

That the husband of the petitioner is and was a citizen of the United States, and that the petitioner was lawfully married to him, is conceded. That such marriage was recognized by the Department of Labor immediately after her marriage, following her former arrest, by releasing her from such arrest on a similar charge, appears in the record. It has been held by the Circuit Court in this Circuit (Leonard v. Grant, 5 Fed. 11) that the clause, "might herself be lawfully naturalized," applies to the race or class or nationality of persons who are excluded from citizenship in the United States, and not to the personal qualification of the individual whose class or race is not excluded, and does not apply to the character of the individual. The Circuit Court of Appeals in this Circuit, in Hopkins v. Fachant (appealed from this district) 130 Fed. 839, 843, 65 C. C. A. 1, 5, says:

"The rule is well settled that her marriage to a naturalized citizen of the United States entitled her to be discharged. The status of the wife follows that of her husband. Rev. Stat. § 1994 (U. S. Comp. St. 1901, p. 1268); Leonard v. Grant (C. C.) 5 Fed. 11; Kelly v. Owen, 7 Wall. 496 [19 L. Ed. 283]; United States v. Keller (C. C.) 13 Fed. 82; Ware v. Wisner (C. C.) 50 Fed. 310; Broadis v. Broadis (C. C.) 86 Fed. 951."

By the provisions of section 1994, supra, citizenship acquired is not a qualified or contingent one, but, until revoked by a court of competent jurisdiction, is as enduring and unqualified as if she had been actually naturalized upon her own formal application. Leonard v. Grant, supra; United States v. Keller (C. C.) 13 Fed. 82. Citizenship is a valuable right, and the most distinguished and honorable franchise which can be conferred by the government of the United States, and, when acquired, cannot be taken away without due process of law. Under the Constitution of Washington and the Constitutions of some of the other states, the right to own real estate depends upon citizenship. If, perchance, the petitioner acquired real estate by purchase in the state of Washington, after marriage and discharge from the former arrest because of her citizenship, such real estate, on deportation because she is not a citizen of the United States, would become the subject of forfeiture by the state of Washington, and she therefore deprived of property acquired in reliance upon section 1994, supra, and the former holding of the Department.

If the marriage of the petitioner was conceived in fraud, as contended by the respondent, and executed for the purpose of evading the immigration laws of the United States and preventing her deportation, such fact, from the history of this case disclosed in the record, should be established in a court of competent jurisdiction, in an action commenced for the purpose, where she would be accorded the right of compulsory process for the attendance of witnesses, and her right to remain be determined consistent with principles that inhere in due process of law. There is a distinction in the due process of law in depriving one of a citizenship once acquired and a procedure in determining the right of an alien to enter or remain in the United States. The Supreme Court of the United States, in Low Wah Suey v. Backus, 225 U. S. 469, 475, 476, 32 Sup. Ct. 734, 738 (56 L. Ed. 1165), says:

"It was the manifest purpose of Congress in passing this law to prevent the introduction and keeping in the United States of women of the prohibited

class. The object of the act was to exclude alien prostitutes, or, if they entered and were found violating the statute within the period prescribed, to return them to the country whence they came."

The petitioner in that case belonged to a class or race which was excluded, but by reason of marriage could remain in the United States so long as she did not practice the prohibited acts, and the issue here was not before the court, and the court did not pass on the issue as here presented. In the instant case, the petitioner does not belong to an excluded race, but it is claimed is excluded because of immoral character. That is a question of fact, which evidently was passed upon by the department under the former arrest, when she was discharged, and if she was a citizen then, and by reason thereof qualified to remain, she is a citizen now, for no decree of revocation of citizenship appears.

It would not be contended that a naturalized alien, admitted to citizenship by fraud practiced upon the court, could be deported until he had been given his "day" in court, and his acts condemned and citizenship revoked. Is the petitioner entitled to the same right? Is the hearing before the Department of Labor such a hearing? Is there a distinction between the right of an alien charged with the violation of the immigration laws in entering or remaining in this country, and the right of a foreign-born individual who has attained unto the standard of citizenship? The Department of Labor, by the act of Congress, is given exclusive jurisdiction over the alien until he has passed to the status of a citizen (Ex parte Moola Singh et al. [D. C.] 207 Fed. 780; White v. Greggory [C. C. A.] 213 Fed. 768); but does this jurisdiction obtain after the status of citizenship is attained, or does jurisdiction to determine any issue with relation to citizenship after it is attained, repose in the courts?

It is not necessary to answer all of the above questions. From the record in this case I am of opinion that the department was without jurisdiction to order the petitioner deported, until such citizenship is revoked and she relegated to the status of an alien. If the respondent appeals within 20 days after filing this decision, the petitioner shall give recognizance with sufficient surety in the sum of $2,000, conditioned to appear and answer the judgment of the appellate court, in accordance with Supreme Court rule 34 (198 Fed. xxviii, 115 C. C. A. xxviii).

An order may be presented.