## THE STATE v. ADAMS.

1. **Citizen**: REMOVAL FROM COUNTRY. Removal from the country and residence under another government for a period of years does not deprive one of his citizenship in this country.

2. ———: CITIZENSHIP OF A CHILD. The citizenship of the child is determined by that of the father, and though the latter reside in another country the child will be a citizen of this if the father has not forfeited or surrendered his allegiance thereto.

3. ———: MILITARY SERVICE. Involuntary military service in a foreign army by a citizen of this country, and the acceptance of a bounty therefor, does not have the effect to deprive him of his citizenship here.

*Appeal from Pottawattamie Circuit Court.*

MONDAY, DECEMBER 11.

THIS is a civil action by ordinary proceedings, brought for the purpose of testing the right of defendant to hold and exercise the duties of the office of mayor of the town of Avoca. There was a trial to the court, a finding in favor of defendant, judgment, and plaintiff appeals.

*John Scott* and *Montgomery & Scott*, for appellant.

*Sapp & Lyman*, for appellee.

SEEVERS, CH. J.—The right of the defendant to hold the office in question depends upon the fact whether or not he was a citizen of the United States and State of Iowa. The Circuit Court made the following finding of facts:

"1st. That the defendant's paternal grandfather was born

The State v. Adams.

in Connecticut in the year 1764, and from there emigrated to Canada, in the year 1790, with the intention of making Canada his permanent domicile, and that he remained in Canada until his death in the year 1838.

2d. That the defendant's father was born in Canada in the year 1795, and resided there until the year 1834.

3d. That the defendant was born in Canada in the year 1834, and during the same year came with his father to the United States, where they have ever since resided.

4th. That the defendant has resided in the State of Iowa ever since its admission into the Union, and in the town of Avoca for the two years last past.

5th. That the defendant's father, while a resident in Canada, served in the Canada militia in the war of 1812, but that such services were involuntary on his part.

6th. That in the year 1875 the defendant's father received of the Canadian government a bounty of $20 for such ser-vices.

7th. That neither the defendant or his father has ever been naturalized under the laws of the United States for the naturalization of aliens."

In the absence of any evidence it cannot be presumed the defendant's paternal grandfather adhered to the British Gov-ernment during the revolutionary war, nor can it be presumed he intended by his removal to Canada and making his perma-nent domicile there to renounce his citizenship in this coun-try. From the facts before us alone must this question be determined.

The doctrine of the American courts seems to be that all persons domiciled in this country on the 4th day of July, 1776, and who remained here after the treaty of peace in 1783, became citizens. If a person was domiciled here on the 4th day of July, 1776, and adhered to the British Gov-ernment, and left the country before the treaty of peace, and thereafter remained abroad, he did not become a citizen. In other words, between the above periods the question of citi-zenship depended on the intention, and during that period the right of election existed. The English courts have held that

the right of citizenship did not attach until the treaty of peace in 1783, and that all persons domiciled here at that period became citizens.

It matters not in this case which rule is adopted. By the common law allegiance is not a matter of individual choice. It attaches at the time and on account of birth, and under circumstances in which the family owe allegiance and is entitled to protection. A person may be domiciled in one place or country, and owes allegiance to and be a citizen of another. The fact that plaintiff's grandfather made his permanent domicile in Canada does not of itself prove him to be an alien. Even if he was regarded as a British subject, this would not necessarily make him an alien. The laws of the United States determine what persons shall be regarded as citizens, irrespective of such persons' pleasure or the laws or pleasure of any other government.

For aught that appears, plaintiff's grandfather never intended or desired to become a citizen of Canada. His having his permanent domicile there, at least, is not sufficient to prove such intention.

We are of the opinion that defendant's grandfather, at the time he removed to Canada, in 1790, was and had been for 1. CITIZEN: several years a citizen of this country, and that he removal from country. remained such notwithstanding his removal to and subsequent death in Canada. In this conclusion we are sustained, we think, by the following authorities: *Calais v. Marshfield*, 30 Maine, 411; *Peck v. Young*, 26 Wend., 612; *Inglis v. Trustees Sailor's Snug Harbor*, 3 Peters, 99.

The father of plaintiff was born in Canada, in 1795, at which time his father as we have seen was a citizen of this 2. ———: citizenship of country. Ordinarily the citizenship of the child child. at its birth is determined by that of the father. If there be a doubt as to this principle, it must be regarded as removed by the Act of Congress passed in 1802, which provides, * * "Children of persons who now are, or have been citizens of the United States, shall, though born out of the limits and jurisdiction of the United States, be considered as citizens thereof." Revised Statutes United States, § 2172.

This language clearly and unmistakably includes the plaintiff's father, and he thereby (if not otherwise) became entitled to all the rights of citizenship.

The involuntary part he took in the war of 1812, and the acceptance of a bounty therefor from the Canadian govern-
3. ——: military ment, long after he became domiciled in the United
tary service. States, is not sufficient to deprive him of the rights conferred by the act of Congress.

In *Calais v. Marshfield, supra,* the person whose citizenship was contested while domiciled in New Brunswick became the owner of a farm, performed military duty, and held the office of surveyor of highways, and also voted there, his right never having been questioned. These several acts were voluntary, while in the case at bar nothing of this kind appears, except the acceptance of the bounty as some compensation for an involuntary act.

Without further enlarging upon this question, we conclude that plaintiff at the time of his election was a citizen of the United States, and of the State of Iowa, and entitled to hold the office in question.

AFFIRMED.