JOHN H. HALSEY, PLAINTIFF, v. MARGARET BEER,
DEFENDANT.

*Alien woman — married to a naturalized non-resident citizen of the United States —
right to take real estate by descent.*

In a controversy, submitted without action to determine the succession to certain
real property, it appeared that David E. Pierson died seized and possessed of the
property in question, leaving him surviving two aunts, Margaret Beer, wife of
John Beer, and Catharine Powles, and two cousins, children of a deceased aunt,
all of whom were of English parentage and resided in England. Neither they
nor their parents had ever been in the United States previous to the death of
David E. Pierson.

John Beer, the husband of Margaret Beer, the maternal aunt of David E. Pierson,
came to this country in the year 1833, and was naturalized as a citizen of the
United States on the 12th day of October, 1840. He subsequently returned to
England and married Margaret on July 4, 1876, at Southampton. Margaret,
who was a woman of English birth and parentage, never was in the United
States, and after her marriage resided with her husband in England.

*Held,* that Margaret Beer was entitled to the lands in question by virtue of the
following provision contained in the act of congress, passed on February 10, 1855:
"And be it further enacted that any woman who might be lawfully naturalized
under the existing laws, married, or who shall be married, to a citizen of the
United States, shall be deemed and taken to be a citizen."

That the language employed in this law referred to the inherent capacity of the
woman and not to her present qualifications; and that any woman possessing
the capacity, such as race and blood, to enter upon the path leading to judicial
naturalization, became, by marriage with an American citizen, invested with his
citizenship, and with all the rights and privileges incident thereto.

*Burton* v. *Burton* (1 Keyes, 359); *Luhrs* v. *Eimer* (80 N. Y., 177) followed.

CONTROVERSY submitted, upon an agreed statement of facts,
pursuant to sections 1279 to 1281 of the Code of Civil Procedure.

*M. H. Topping,* for the plaintiff.

*Robert E. Topping,* for the defendant.

DYKMAN, J.:

This is a submission, without action, to determine the succession
to real property in the county of Suffolk, described in the statement
printed in the case.

David E. Pierson died seized and possessed of the property in
question on the 16th day of February, 1888, intestate as to this real

estate. He was twenty-one years of age at the time of his death, and this property was devised to him by the last will and testament of his father, David Pierson, who died on the 14th day of October, 1871; who was the only child of his father, who had owned this property many years before his death; and who was the grandson of Captain David Pierson, who died February 25, 1829, seized and possessed of the lands in question. David E. Pierson left him surviving no father or mother, brother or sister, or descendant of any brother or sister; no uncle or aunt on his father's side, or descendant of any uncle or aunt on the side of his father. On the side of his mother, Susan A. Pierson (formerly Susan A. Powles), who died June 20, 1881, David E. Pierson left two aunts, Margaret Beer, wife of John Beer, and Catharine Powles, and two cousins, children of a deceased aunt, all of whom are of English parentage and reside in England, and none of whom, or their parents, had ever been in the United States previous to the death of David E. Pierson. John Beer, the husband of Margaret Beer, the maternal aunt of David E. Pierson, came to this country in the year 1833, and was naturalized as a citizen of the United States on the 12th day of October, 1840. He subsequently returned to England and married Margaret on the 4th day of July, 1876, at Southampton. Margaret was a woman of English birth and parentage, and has resided with her husband in England since her marriage, and has never been in the United States. John H. Halsey is a collateral relative of David E. Pierson on his father's side, who is entitled to succeed to the lands in question, provided Margaret E. Beers is deprived of such succession.

Our conclusion is in favor of Margaret Beer. The only obstruction in the way of her inheriting the property by descent is her disability to inherit by reason of her alienage, and such disability was removed by the act of congress of February 10, 1855, which reads as follows: "And be it further enacted that any woman who might be lawfully naturalized under the existing laws, married or who shall be married to a citizen of the United States, shall be deemed and taken to be a citizen." The language employed in this law to denote the intention of its makers refers to the inherent capacity of the woman, and not to her present qualifications. It is language of potentiality, capacity or power as distinguished from actuality. Any woman possessing the natural capacity or power to enter upon

the path leading to judicial naturalization, such as race and blood, becomes by marriage with an American citizen invested with h's citizenship, and with all his rights and privileges incident thereto.

Margaret Beer might have become lawfully naturalized at any time, and, therefore, she falls under the protection of the law of congress, which was evidently designed to include all such cases. We have thus far based our conclusion upon principle and reason, but, so far as judicial opinion has found expression, it seems to be in the same direction, and although much that has been said upon the subject in written opinions has been unnecessary to the determination of the case in which it was said, yet it discloses the opinions of eminent judges and is entitled to great weight and consideration.

In the case of *Burton* v. *Burton* (1 Keyes, 359) it was decided by our Court of Appeals that the alien widow of a naturalized citizen of the United States, although she never resided in the United States during the lifetime of her husband, was entitled to dower in his real estate; and Judge WRIGHT, who wrote the prevailing opinion, in speaking of the act of congress quoted above, said: " The effect of the act was to grant the privileges of citizenship to women married to citizens of the United States, without regard to the fact whether the ceremony of marriage had preceded the ceremony of naturalization, in cases where the husband was a naturalized citizen, provided the woman herself might lawfully be naturalized under the then existing laws." In reference to the requisites for naturalization he further said: " The existing naturalization act required no more than that the person claiming its benefits should be a free white person and not an alien enemy. Such a person might lawfully be naturalized." Upon the question of residence he said: " It is true that from some cause she never actually resided in this country, but the act does not require that the woman claiming its benefits shall have resided within the United States."

In the case of *Luhrs* v. *Eimer* (80 N. Y., 177) Judge ANDREWS, in writing the unanimous opinion of the Court of Appeals, said: "Barbara Eimer, by her intermarriage with Gottfried Baur in 1857, who was a citizen, became herself a citizen by virtue of such marriage and capable of taking and holding lands in this State by purchase or descent;" and he cites the act of congress of 1855, *Burton* v. *Burton* (1 Keyes, 359) and *Kelly* v. *Owen* (7 Wall., 496).

In this last case Mr. Justice FIELD, in writing the opinion of the court, said in reference to the act of congress in question: "As we, construe this act, it confers the privileges of citizenship upon women married to citizens of the United States, if they are of the class of persons for whose naturalization the previous acts of congress provide. * * * The terms 'who might lawfully be naturalized under the existing laws' only limit the application of the law to free white women."

We, therefore, record our determination that Margaret Beers, as heir-at-law of David E. Pierson, is entitled to take the lands and property in question, and judgment should be rendered in her favor for the possession of such lands, with costs.

BARNARD, P. J., concurred.

PRATT, J. :

The rule seems to be that an alien woman who intermarries with a citizen of the United States is to be regarded as a citizen of the United States, within the meaning of the act of February 10, 1855, though she may never have resided in this country ; that the marriage "*per se*" invests the woman with the citizenship of her husband in the place and stead of her former allegiance. The act of congress is as follows: "And be it further enacted, that any woman who might be lawfully naturalized under the existing laws, married, or who shall be married, to a citizen of the United States, shall be deemed and taken to be a citizen."

It would be a very restricted meaning to the words, "who might be lawfully naturalized under existing laws," to hold that they must include, at the time of marriage, all the qualifications necessary for a judicial naturalization, such as residence, good character, declaration of intention, etc. The whole intent of the law would be nullified. To avail herself of the benefits of the law, under such a construction, an alien woman would be obliged to comply with all the requirements of becoming a citizen, except obtaining a judicial decree.

The more reasonable construction seems to be that these words refer to the inherent and natural capacity of the woman to be naturalized by reason of race, without reference to residence or any other qualification required by the naturalization laws. Unless this con-

struction prevails all her rights of citizenship under the statute, by reason of marriage, remain suspended until she can qualify herself to become a citizen by complying with all the requirements of the laws relating to naturalization. The authorities all seem to hold that the instant marriage takes place the woman becomes invested with the citizenship of her husband. (Vol. 14, Opinions of Attorney-General, p. 402, and authorities therein cited.)

The act of congress referred to seems to conform to the act (7 and 8 Vic.) passed in 1844, which declares that an alien woman marrying a British subject becomes naturalized by the act of marriage. (*Regina* v. *Manning*, 2 Car. & Kir., 886; 61 English Common Law Rep.) The word "might" in the act of congress must refer to the time of marriage, and must refer to the inherent capacity to take the initial step towards naturalization, to wit, of the proper race or blood, to bring her within the naturalization laws. Margaret Beer, at the time of her marriage, met this requirement, and must, therefore, be held entitled to recover in this proceeding. (*Kelly* v. *Owen*, 7 Wall., 496; *Leonard* v. *Grant*, 6 Sawyer, 603, referred to in the attorney-general's opinion.)

Judgment to defendant on submitted case, with costs.