CHARLOTTE WAINWRIGHT, Respondent, v. WILLIAM G. LOW and THE SAILOR'S COFFEE HOUSE COMPANY (Limited), Appellants.

*Trust — when valid as a power — when the title remains in the grantor — release from escheat by the State.*

An ante-nuptial trust deed which conveys real property to a trustee, in trust to receive the rents, or to permit the grantor to take, hold and use the same for her use and benefit at her election, and at her death to convey it to such persons as she shall appoint by her deed or will, is valid as a power, but has no further legal operation, and leaves the title to the property in the donor of the power.

In such case the trustee takes no interest in the premises, and the title remains in the grantor subject to be divested by her exercise of her power of appointment reserved in the deed and a conveyance made in pursuance thereof by the trustee.

Under the provisions of chapter 115 of the Laws of 1845, as amended by chapter 261 of 1874, the State surrendered any title, acquired by it by escheat before the passage of that law, to an heir-at-law of the deceased owner of land, although such heir was an alien at the time of the death of her ancestor.

The title thus acquired was not taken away by chapter 184 of 1876, authorizing and empowering a person therein named to take, hold and convey the property in question, and granting and releasing the estate, right and interest of the people of the State of New York acquired by escheat at the time of the death of the ancestor to him, such act containing a proviso that nothing in the act should be construed so as to affect the right in the property of any heir-at-law.

Appeal by the defendants from a judgment of the Supreme Court, entered in the office of the clerk of the county of Kings on the 28th day of January, 1890, adjudging that the plaintiff Charlotte Wainwright was, at and before the commencement of the action, the owner of the premises described in the complaint, and was entitled to the possession thereof from the defendant William G. Low and the Sailor's Coffee House Company (Limited), together with damages and costs.

*Thomas S. Moore*, for the appellants.

*S. R. Ten Eyck*, for the respondent.

DYKMAN, J.:

This is an appeal by the defendants from a judgment entered upon the report of a referee in an action for the recovery of real property located in the city of Brooklyn.

On the 18th day of July, 1846, Sarah Ann Wood was the owner of the premises in question, and being about to marry George G. Ackley, she then executed an ante-nuptial trust deed of the property to Edward F. Sanderson, in trust, to receive the rents, or permit her to take, hold and use the same for her use and benefit at her election, and at her death to convey it to such person as she should appoint by deed or will.

Sarah Ann Porter was born of English parents in England and prior to the year 1836 was married to a man named Wood, who was a citizen of the United States, and after his death she was married to George G. Ackley in July, 1846. After the death of Mrs. Ackley, in 1871, there was found in her bureau, rolled up in a piece of old bed-tick, a written instrument, bearing her name and a seal, reciting the execution of the trust deed, her subsequent marriage to Ackley and the desire of the trustee to divest himself of the trust, and then authorizing and directing the trustee to convey the property to her husband. There was no certificate of acknowledgment upon the instrument and it was not subscribed by any witness, and the referee found that it was not signed with intent to impart to it any legal effect or operation, and that it was never delivered but was retained by Mrs. Ackley in her possession during her lifetime, and that she continued in possession of the property down to the time of her death in 1871, and her husband continued to reside upon the property until he died in 1876. The trustee Sanderson died in 1866 without having conveyed the property and without a request to do so. Mrs. Ackley died intestate without having conveyed the property, except by the trust deed, leaving the plaintiff, who is her sister, but who never became a citizen of the United States, her only heir-at-law.

In the year 1876 George G. Ackley presented a petition to the

SECOND DEPARTMENT, JULY TERM, 1890.

Supreme Court praying for the appointment of a trustee in the place of Sanderson and that such new trustee be directed to carry into effect the directions contained in the instrument already mentioned, purporting to have been signed by his wife, to convey the property to him. Upon that petition a trustee was appointed with the directions prayed for, who qualified and executed and delivered a deed of conveyance of the property to Ackley. The plaintiff had no notice of such proceedings. The defendant Low traces his title from Ackley through several mesne conveyances, and Low is a purchaser in good faith.

Upon the foregoing facts the referee decided that Sarah Ann Ackley made no valid appointment under the power reserved to her for that purpose in her ante-nuptial deed of trust, and that she died seized of an estate in fee in the premises in question.

Also, that at the time of the death of Sarah Ann Ackley the plaintiff, Charlotte Wainwright, her sister and only heir, was an alien, and had never become a citizen of the United States, and that by reason of her alienage she had not then capacity to take the premises by descent, and that they escheated to the State of New York; but that such disability of Charlotte Wainwright was removed and the title of the State to the premises released to her by chapter 261 of the Laws of 1874, and that she thereupon became seized of the premises in fee and entitled to the possession thereof.

That George G. Ackley never acquired title to the premises by virtue of chapter 184 of the Laws of 1876, or by the deed made to him by the substituted trustee under the ante-nuptial deed of Sarah Ann Ackley, or otherwise, and that the defendant never had any valid title to the premises.

Such are the conclusions of the referee upon which he directed a judgment in favor of the plaintiff, and our examination conducts us to the same determination.

It will be in order to consider now whether Mrs. Ackley exercised and executed the power of appointment reserved in her ante-nuptial trust deed. If she did, the plaintiff could not take the property by inheritance, and so the inquiry is of vital importance in the determination of the case.

By the terms of the trust deed the power of appointment was to be exerted by Mrs. Ackley by the execution of a deed or instrument

in writing in the nature of a last will and testament under her hand and seal, duly made and executed in the presence of two or more witnesses, and the statute required the execution of any deed by a married woman to be acknowledged apart from her husband.

The referee has found that the signature to the instrument is genuine, but we do not concur in that conclusion. Mrs. Ackley had the paper in her possession three weeks before her death and showed it to Mrs. Jane Young and said her husband got it and signed her name to it and it was not like her writing, and the witness says also it was not like her writing.

There is no proof to the contrary except the comparison with the bank-book and the testimony of the expert, which is entitled to slight consideration only. Signatures are made by no rule or measure, and they always differ, and are, therefore, easily counterfeited, and it always is difficult to distinguish the genuine from the spurious.

The point, however, is not very important, for the referee has found that the instrument was not delivered, and he is well sustained in that conclusion.

But we go further and find from the undisputed facts and the surrounding circumstances that the paper never was executed for the purpose of imparting to it any legal force or effect, even if it were signed by Mrs. Ackley.

All the parties were familiar with the terms of the trust deed and with all the formalities essential to the due execution of the power of appointment reserved therein, and if Mrs. Ackley intended to execute the deed of appointment and impart to it validity and effect, it is fair to presume that all the requisites of the trust deed and of the law would have received compliance, and the trustee would have received a request to execute the power. Instead of that, however, the trustee received no request to make the deed, and the paper remained in the possession of Mrs. Ackley more than twenty years, until she died, and her husband acquiesced in her retention of the paper.

We have no hesitation, therefore, in holding that the instrument never was executed with any view to its delivery and that it never was delivered.

We have not overlooked the *ex parte* proceedings of Ackley for the appointment of a substituted trustee and the procurement of a

deed from the new trustee, but all the circumstances now developed satisfy us that an imposition was practiced upon the court by the petitioner and that the order was obtained by fraud.

Moreover, the action of the court was based upon the false assumption that Mrs. Ackley had exercised the power of appointment reserved in the trust deed, and we now find that such assumption was false and that the instrument signed by her for that purpose never became effective. No appointment having been made by Mrs. Ackley in her lifetime, the power vested in the trustee never became operative, and upon her death it ceased to exist and could not be exerted thereafter. Its execution became impossible and it was practically extinguished. (*Hotchkiss* v. *Elting*, 36 Barb., 38.)

As, therefore, there was no trust and no valid power in trust and no trust estate, there was no occasion or authority for the appointment of a new trustee, and when he was appointed he was destitute of power and his action was nugatory.

Such being our conclusion upon the first question, it becomes essential next to inquire whether Mrs. Ackley died seized of the premises.

By the ante-nuptial trust deed Mrs. Ackley undertook to convey her property to Sanderson, in trust, to receive the rents thereof or to permit her to take, hold, receive and use the same at her election, and she did elect to use the property in question and did occupy it during her lifetime. Some embarrassment is created by the alternative provision in the instrument, but in view of the purposes to be subserved, and of the recitals in the deed and the actual election of the grantor, we think the instrument was designed to create a trust to hold the property and permit its occupation and use by the beneficiary.

. The trustee took no right to the possession or to the rents and profits of the land, and the trust is, therefore, void, because it is not authorized by the statute. (1 R. S., 727, 728, 729, §§ 45, 55.) The parties endeavored to create a passive trust, and such trusts were abrogated by the Revised Statutes.

Yet the instrument was not wholly void. It bestowed upon the trustee a dormant power to convey land, and the power might become active and operative under a proper appointment of a person to receive the conveyance. He became the trustee of a power, and the

instrument was converted into a power in trust by section 58 of that statute which provides that where an express trust shall be created for any purpose not enumerated in the preceding sections, as this is not, no estate shall vest in the trustee; but the trust, if directing or authorizing the performance of any act which may be lawfully performed under a power, shall be valid as a power in trust, subject to the provisions in relation to such powers contained in the article respecting powers.

By section 47 of the statute every person who, by virtue of any grant, assignment or devise, now is, or hereafter shall be entitled to the actual possession of lands and the receipt of the rents and profits thereof in law or in equity, shall be deemed to have a legal estate therein of the same quality and duration, and subject to the same conditions as his beneficial interest.

Then follows section 49, which provides that every disposition of lands, whether by deed or devise, hereafter made, shall be directly to the person in whom the right to the possession and profits shall be intended to be invested, and not to any other to the use of or in trust for another; no estate or interest, legal or equitable, shall vest in the trustee.

If any elucidation of the design of these sections of the statute is essential, it is furnished by the note of the Revisers to section 47, in which they say : " This section will convert all formal trusts into legal estates in the beneficial owner, and thus effectuate the original intent of the statute of uses." Then they add an extract from the famous speech of Lord Brougham on the state of the law, in which he said : " I would restore the statute of uses to what it was clearly intended to be. Our ancestors made that law by which, if land were given to A for the use of B, the latter was deemed the legal owner; the use being executed in him just as if A did not exist."

These two sections of the statute are aimed against the creation of legal estates impressed with trusts or trust duties, except such as are authorized by section 55, and they show that the legislature intended to turn what would otherwise have been a passive trust into a legal estate in the *cestui que trust*. (*Rawson* v. *Lampman*, 5 N. Y., 462; *N. Y. Dry Dock* v. *Stillman*, 30 id., 194.)

The ante-nuptial trust deed offended against section 49 of the statute, which made it imperative that every disposition of lands

thereafter made should be directly to the person in whom the right to the possession was intended to be vested, and not to any one for the use of or in trust for such person, and abridged the effect of every disposition of land made in violation of the section by declaring that no estate or interest should vest in the trustee thereby.

The trust deed, therefore, was valid as a power, and had no further legal operation, and left the title to the property in the donor of the power, and whether the trust created is active or passive is quite immaterial, for if it was the former, it was a power in trust and the title remained in the donor, and if it was the latter, the statute executed the use by carrying the title to the beneficiary and vesting the same in her. The trustee took no right of possession and no interest in the rents and income, for both were retained by the grantor under her right of election.

Our conclusion, therefore, upon this question is that the trustee took no interest in the premises and that the title remained in Mrs. Ackley, subject to be defeated by her exercise of the power of appointment reserved in the deed, and a conveyance in pursuance thereof by the trustee. It follows, therefore, that Sarah Ann Ackley died seized of the premises, but as the plaintiff was then an alien she had not the capacity to take the premises from her sister by descent, and, therefore, they passed to the State by escheat. It becomes, therefore, necessary now to inquire how and to whom the title was transferred by the State. Mrs. Ackley was a citizen of the United States before her marriage with Ackley by virtue of her prior marriage with Wood, who was a citizen; such citizenship was conferred by the act of Congress of February 10, 1855 (chap. 71), which enacted as follows: "And be it further enacted that any woman who might lawfully be naturalized under the existing laws, married or who shall be married to a citizen of the United States, shall be deemed and taken to be a citizen."

In the case of *Halsey* v. *Beer* (52 Hun, 366), we decided that the language employed in this law referred to the inherent capacity of the woman, and not to her present qualifications, and that any woman possessing the capacity, such as race and blood, to enter upon the path leading to judicial naturalization, became by marriage with an American citizen invested with his citizenship, and with all the rights and privileges incident thereto. On the 27th day of April,

1874, the legislature of this State passed a law (chap. 261) amending section 4 of the act to enable resident aliens to hold and convey real estate and for other purposes, passed April 30, 1845 (chap. 115) so as to cause it to read as follows : " If any alien resident of this State or any naturalized or native citizen of the United States, who has purchased and taken or hereafter shall purchase and take a conveyance of real estate within this State, has died, or shall hereafter die, leaving persons, who, according to the statutes of this State, would answer the description of heirs of such deceased person, such person so answering the description of heirs of such deceased person, whether they are citizens or aliens, are hereby declared and made capable of taking and holding, and may take and hold as heirs of such deceased person as if they were citizens of the United States, the lands and real estate owned and held by such deceased alien or citizen at the time of his decease." Then follows a provision respecting males of full age, which has no application to this case.

We think that the statute fits this case and operated as a surrender by the State of the title which it had acquired by escheat to the premises in question before the passage of the law. (*Luhrs* v. *Eimer*, 80 N. Y., 180.)

Mrs. Ackley was a naturalized citizen of the United States and had taken the premises by purchase between the passage of the law of 1845 and the law of 1874. She died prior to the law of 1874, leaving the plaintiff who, according to the statutes of this State, would answer the description of her heir ; and as she thus answered the description of an heir to the deceased Mrs. Ackley, whether she was a citizen or an alien, she was, by the statute, made capable of taking and holding as such heir the property in question.

The examination of the case thus far having resulted favorably to the plaintiff, it becomes essential to determine the legal effect of another statute designed to aid the husband of Mrs. Ackley.

On the 27th day of April, 1876, the legislature of this State passed a law authorizing and empowering George G. Ackley to take, hold and convey the property in question, and granting and releasing all the estate, right and interest of the people of the State of New York acquired by escheat at the time of the death of Mrs. Ackley in the premises to George G. Ackley, his heirs and

assigns forever. But the second section of the act contained a proviso that nothing contained in the act should be construed so as to affect the right in the property of any heir-at-law. (Chapter 184, Laws of 1876.)

If we are right in our view of the effect of the law of 1874, and that act operated to release the interest of the State to the plaintiff as the sole heir of Mrs. Ackley and vest the title to the premises in the plaintiff, then the State had no interest in the premises in 1876 to release, and George G. Ackley took nothing under the act of 1876.

The disability of the plaintiff, by reason of alienage, was removed by the law of 1874 (chap. 261) and her relationship of sole heir to Mrs. Ackley being undisputed, we think the plaintiff became vested with the title *eo instante* upon the passage of that law by virtue of the following language : " Such persons so answering the description of heirs of such deceased person, whether they are citizens or aliens, are hereby declared and made capable of taking and holding, and may take and hold, as heirs of such deceased person as if they were citizens of the United States, the lands and real estate owned and held by such deceased alien or citizen at the time of his decease."

This act is plainly retrospective in its operation and preserves the rights of persons who, before its passage, had acquired interests and rights to lands which they were unable to enjoy by reason of the disability of alienage.

After a most careful examination we are led to an affirmance of the judgment. Its operation is harsh, and it would have been a pleasant duty to decide in favor of a *bona fide* purchaser for a very praiseworthy purpose, but in our view of the present state of the law such a result was impossible.

The judgment should be affirmed, with costs.

BARNARD, P. J., concurred.

Judgment affirmed, with costs.