UNITED STATES ex rel. NICOLA v. WILLIAMS.

UNITED STATES ex rel. GENDERING v. SAME.

(District Court, S. D. New York. October 29, 1909.)

1. CITIZENS (§ 7*)—MARRIAGE OF ALIEN WOMAN TO CITIZEN.

The marriage of a woman who is a subject of the Turkish Empire with an American citizen makes her a citizen of the United States, and the fact that after her marriage, and before she reaches the United States with her husband, she may have contracted some disease which would have excluded her as an alien, will not warrant her exclusion.

[Ed. Note.—For other cases, see Citizens, Cent. Dig. § 6; Dec. Dig. § 7.*

Citizenship of married women, see note to Hopkins v. Fachant, 65 C. C. A. 5.]

2. HABEAS CORPUS (§ 23*)—IMMIGRATION—REVIEW OF DECISIONS OF DEPARTMENT.

Where the right of a person to enter the United States, claimed on the ground of citizenship, is denied by the immigration officers, and depends wholly on a question of law, such question may be reviewed by the courts on a writ of habeas corpus.

[Ed. Note.—For other cases, see Habeas Corpus, Dec. Dig. § 23.*

Jurisdiction of federal courts, see note to In re Huse, 25 C. C. A. 4.]

3. CITIZENS (§ 7*)—MARRIED WOMAN—NATURALIZATION OF HUSBAND.

Petitioner, who was a citizen of Holland, married an alien in New York, but afterward deserted him and returned to Holland with a paramour. Before she returned to this country her husband became a naturalized citizen of the United States. Held, that as, under the law both of Holland and the United States, the wife's citizenship is that of the husband, she became a citizen of the United States on the naturalization of her husband, and that her status and right to enter this country on her return were not affected by the fact of her desertion.

[Ed. Note.—For other cases, see Citizens, Cent. Dig. § 6; Dec. Dig. § 7.*]

Habeas corpus proceedings, on relation of Thakla Nicola and Bertha Gendering, respectively, against William Williams. Petitioners discharged.

These are two cases involving much the same question. In the first case a naturalized citizen left this country and went to Syria, a part of the dominions of the Sultan of Turkey, and there married the relator, a subject of that potentate. After living some time in that country with her, he now brings her to the United States, and she has been stopped by the immigration authorities on the ground that she is suffering from trachoma, a disease which concededly would exclude her, if she be an alien. The question, therefore, arises as to whether she is a citizen, and so entitled to admission.

In the second case the relator immigrated into this country from Holland, and subsequently married a Dutchman, who was likewise an alien, and with whom she lived in the city of New York. Thereafter she left her husband and began living with a paramour. Subsequently she and her paramour went back to Holland, and while she was there her husband became a naturalized citizen of this country. She now seeks to return, and is stopped at Ellis Island on the ground that she is being imported for an immoral purpose.

*For other cases see same topic & § NUMBER in Dec. & Am. Digs. 1907 to date, & Rep'r Indexes

Carell & Henkel, for relator Nicola.
Kahn & Hegt, for relator Gendering.
Henry A. Wise, U. S. Atty., for Commissioner of Immigration.

HAND, District Judge. Under several state authorities the marriage of a woman in a foreign jurisdiction to a citizen of this country is within section 1994, Rev. St. U. S. (U. S. Comp. St. 1901, p. 1268). Halsey v. Beer, 52 Hun, 366, 5 N. Y. Supp. 334; Headman v. Rose, 63 Ga. 458; Kane v. McCarthy, 63 N. C. 299; Burton v. Burton, *40 N. Y. 359. This body of authority should, I think, be conclusive upon me, in spite of the fact it is not strictly binding, even if it did not satisfy me in principle. However, I am satisfied on principle that both these women are citizens. Assuming that no sovereign can change the allegiance of the subject of another, while the subject is not within the territorial jurisdiction of the first, in these cases the native sovereign of each woman has relinquished her allegiance. Under the law of the Ottoman Empire, of which the relator in the first case was a subject, the relator's marriage with a citizen of this country changes her allegiance. This is clearly implied from the Turkish Nationality Law of January 26, 1869 (article 7):

"La femme Ottomane qui a épousé un étranger peut, si elle devient veuve, recouvrer sa qualité de sujette Ottomane, en faisant la déclaration dans les trois années qui suivront le décès de son mari. Cette disposition n'est toutefois applicable qu'à sa personne: ses propriétés sont soumises aux lois et règlements généraux qui les régissent."

This received construction in the Circular Addressed to the Governors General of the Vilayets of the Empire, March 26, 1869, in which is the following:

"Comme la femme Ottomane qui épouse un étranger cesse d'etre sujette Ottomane, l'Article 7 lui accorde la faculté de recouvrer, si elle devient veuve, sa nationalité originaire, en le déclarant à l'autorité Ottomane dans les trois ans qui suivront la mort de son mari." Martens, Nouveu Recueil General de Traites, Deuxieme serie, Tome XIX, pp. 658, 659.

It is urged that our own act does not cover the case, but that only she may be naturalized who might at the time be admitted as an alien. The words are "who may herself be lawfully naturalized." I cannot change the words to "admitted and naturalized." Certainly they refer to the classes as defined by the naturalization law. If an alien woman is once admitted, and then marries, would it be an answer to her claim of citizenship that she had trachoma when she married? If not, then it cannot be the case when she acquires the same right while out of the country. Besides, there is no pretense that she had trachoma when she was married, and at that time she could have been admitted. That is the point of time that counts, and at that time each sovereign consented to the transfer of allegiance. It cannot be that our consent was dependent upon her physical presence here.

As to jurisdiction, I think that in spite of United States v. Ju Toy, 198 U. S. 253, 25 Sup. Ct. 644, 49 L. Ed. 1040, the rule governs of Gonzales v. Williams, 192 U. S. 1, 24 Sup. Ct. 171, 48 L. Ed. 317. It is true that in that case the court alludes to the change in the statute; but the words of the act of 1894 were in substance precisely like those

of the act of 1903. Where allegiance depends wholly upon a question of law, the court must review that question and decide upon it.

Therefore let an order go releasing the relator from custody.

In regard to the Gendering Case, I need add but little. The law of Holland is the same as the law of Turkey in regard to the acquisition by a woman of a new allegiance through marriage. "Law relating to Netherlands Citizenship," 1893, art. 7:

"Netherlands citizenship shall be forfeited by * * * (2) Marriage in the case of a woman." From "Law of Naturalization," Prentiss Webster, 1895, p. 260.

The only remaining question is whether the fact that the woman had left her husband and was living with a paramour changed this result. The adultery of the spouse in no sense terminates the marriage relation, which endures until it is dissolved by a competent tribunal. It is not material whether the woman acquired a new domicile or not. Even change of domicile of the spouses did not affect the relation. In this case the allegiance of the husband determines that of the wife by consent of both sovereigns. If the wife's infidelity in this case changed the relation, so must it in the case of any other infidelity. Certainly nothing is added by the fact that she has openly lived with her paramour and with him left the country. She remains sub dominio mariti, however she may disregard her obligations.

Therefore let an order also go in the Gendering Case releasing the relator from custody.