Nelson v. Nelson.

---

CARL NELSON, APPELLANT, V. ALVILDA NELSON ET AL., APPELLEES.

FILED APRIL 16, 1925.    No. 23110.

1. **Aliens:** RIGHT OF INHERITANCE. A child born to a citizen of the United States during his residence abroad, and residing there in her minority, is not a nonresident alien, and may. inherit the lands of her father in Nebraska.

2. ————: ————. A nonresident alien who married a citizen of the United States in 1908 while the latter was residing in her country became by that act a citizen of the United States, and, as such, entitled to inherit, even though she continued to live abroad, provided she complied with the federal law enabling her to retain her citizenship.

3. **Citizens:** EXPATRIATION. Section 3959 of the federal statutes (4 U. S. Comp. St. 1916) establishing a presumption that a naturalized citizen of the United States expatriates himself by

two years of residence in the country of his nativitiy was enacted to relieve this country from the duty of protecting its citizens long abroad in certain cases; and this presumption is rebuttable, not only by the presentation of evidence to a diplomatic or consular officer, but by other sufficient means and circumstances.

4. **Judgment:** JURISDICTION. *Held,* in this case, that the petition filed by the appellees, and positively verified by the next friend of one of the defendants, was sufficient to perform the function of the jurisdictional affidavit and answer required by section 8590 of the Compiled Statutes of 1922, and that the trial court committed no error in so holding, and in the judgment rendered.

APPEAL from the district court for Frontier county: CHARLES E. ELDRED, JUDGE. *Affirmed.*

*Beeler, Crosby & Baskins,* for appellant.

*I. J. Nisley, W. A. Stewart* and *J. A. Williams, contra.*

Heard before MORRISSEY, C. J., DEAN, DAY and THOMPSON, JJ., REDICK and SHEPHERD, District Judges.

SHEPHERD, District Judge.

Chris' Nelson was a naturalized citizen of the United States, who had accumulated about $12,000 worth of personal property and a half-section of land in Frontier county.

In May of 1908 he sailed for Denmark. On the 18th day of December of the same year he was married to his wife, Alvilda, in that country; and by her he had a daughter, Hertha Oman, born on the 28th day of May, 1910. In 1913 he returned to Nebraska to attend to some legal business in connection with his land, after which he went back to Denmark, where he died, November 21, 1915. Afterward, by proceedings in the county court of Dawson county, his estate was duly settled and his personal property was distributed to his widow and daughter, the court adjudging that these persons were his sole heirs, and entitled to his real estate by descent.

This lawsuit was brought on the 18th of February, 1919, by Carl Nelson, a brother of the deceased, who resided in America, to quiet the title to said land in himself. In his

petition, which named the widow and child as defendants, he alleged that he was the owner of the property, and that he was in possession of the same; that Chris had verbally agreed to deed it to him if he would pay the costs and expense of a certain lawsuit then pending upon it, pay certain other claims against him, and pay him in addition the sum of $800; that he had fully performed his contract and was entitled to the property; and that the widow, Alvilda, had, as a matter of fact, conveyed it to him by deed dated in March of 1917, but that the interest of the child clouded the title, though the latter had received payment therefor. Service was by publication. Plaintiff had decree according to the prayer of his petition.

A year later, the widow and her daughter filed a petition in the case, alleging that only constructive service was had upon them, and that they had no actual notice of the pendency of the suit; that they duly inherited the land from Chris Nelson, and that they had a good defense to the action of the plaintiff; that plaintiff and their decedent never entered into any contract of the kind described in plaintiff's petition, and that the plaintiff paid no consideration, as alleged therein; that plaintiff had procured his decree by false and fraudulent allegations and testimony, and that he had likewise obtained the described deed from the defendant Alvilda Nelson, i. e., by falsely representing to her, through his brother, Niels Nelson, that the land was of no value, and that the deed desired was to the three surviving brothers of the deceased to enable them to sell said land and out of the proceeds thereof to satisfy a surety indebtedness contracted by the deceased during his lifetime. They also alleged in their said petition that the plaintiff had collected rents on the land in the sum of $1,000. They prayed vacation of the plaintiff's decree, an accounting with him, the setting aside of the deed to him, and a partition between themselves.

After demurrer, which was overruled, plaintiff answered, alleging the insufficiency of defendant's petition to vacate; denying all of the hereinbefore set out allegations of such

petition; alleging that he had expended upon the land, over and above receipts therefrom, the sum of $1,819.82; alleging further that the defendants Alvilda and Hertha Oman were in any event nonresident aliens who never did, and never could, inherit said land; and praying for a dismissal of defendant's petition and for a confirmation of the decree already entered, or, in case this could not be granted, an accounting and a judgment in his favor, together with a sale of the land to satisfy the sum found due him.

The decree of the court upon trial was in favor of the defendants, awarding them the land in equal shares, subject to judgment in favor of plaintiff and against all of it in the sum of $73.28, with interest thereon at 7 per cent. per annum, and subject to a judgment for $891 with interest at 7 per cent. in favor of plaintiff and against Alvilda Nelson's undivided half. It also provided for the setting aside of the deed to the plaintiff and for the partition of the property as prayed.

The appeal is upon five assignments of error, which will be considered in order.

Complaint is made by the appellant that the district court erred in refusing to quash the depositions. It is grounded, as appears from the motion made upon trial, upon the assumption that there was a translation of the evidence, and that there was no certification that the translating officer was sworn to truly translate. But the depositions were taken by competent authority and at the place named in the notice. The plaintiff cross-examined. The certificate was in due form. No objections seem to have been made before entering upon the trial. As a matter of fact, though there are indications tending to support the statement of fact in plaintiff's motion, it does not conclusively appear that any translation was involved. Under these circumstances, the trial court committed no error in overruling the motion and in receiving the depositions in evidence.

Another contention on the part of the appellant is that the defendants or appellees were nonresident aliens and could not take the land in question by descent from Chris

Nelson.  He relies upon the federal statute of March 2, 1907, the pertinent part of which is as follows:

"When any naturalized citizen shall have resided for two years in the foreign state from which he came, or for five years in any other foreign state, it shall be presumed that he has ceased to be an American citizen, and the place of his general abode shall be deemed his place of residence during said years:  Provided, however, that such presumption may be overcome on the presentation of satisfactory evidence to a diplomatic or consular officer of the United States, under such rules and regulations as the department of state may prescribe.  And provided, also, that no American citizen shall be allowed to expatriate himself when this country is at war."  4 U. S. Comp. St. 1916, sec. 3959.

The theory of the appellant is that this statute in connection with section 3961, also of the federal statutes, which provides that a foreign woman who acquires citizenship by marriage to an American shall only be permitted to retain such citizenship in case she resides abroad by registering before a United States consul within a year after the termination of her marital relation, absolutely prevented the defendant Alvilda Nelson from inheriting.  And they say that this results the more certainly, as far as Nebraska real property is concerned, because of the Nebraska statute, section 5687, Comp. St. 1922.  And they further urge with respect to the child Hertha Oman that, since she was born on the 28th day of May, 1910, she did not become a citizen of the United States, because on that date her father had resided abroad and in the country of his nativity for two years immediately theretofore.

In regard to the latter, it is to be observed that, while the evidence shows that Chris Nelson left the United States for Denmark about the middle of May, or in the latter part of that month, it does not follow that he arrived in Denmark during the month in question.  He may have stopped in England.  He may have traveled on the continent before taking up his abode in the country of his birth.  The record

Nelson v. Nelson.

shows that he was married in Denmark during December of 1908, and there is no proof of his residence there prior to that time and after he left the United States.

But granting, for the sake of the argument, that he arrived in Denmark before the 28th day of May, 1908, and made that country his place of abode for two full years prior to the birth of his daughter Hertha, it is not to be concluded that he had lost his citizenship on the date mentioned. True, the federal statute states that the presumption of expatriation arising from such residence may be overcome by the presentation of satisfactory evidence to a diplomat or consular officer of the United States, but this does not deny the existence of other methods by which to rebut the said presumption. Any sufficient evidence indicating that he did not intend to renounce his allegiance and to give up his citizenship would have the same effect.

A similar question arose in connection with the case of Jebran Gossin. Opinions of Attorneys General, U. S., vol. 28, 504. Gossin, who was a native of Syria, had been naturalized in the United States. Later he returned to Syria and married a wife there, and after a period of two years of residence in his native land came back to this country, bringing his wife with him. She was afflicted with trachoma, and the authorities held her at Ellis island for deportation, relying on the construction of the statute that only by presenting evidence to a diplomatic or consular officer could the presumption that Gossin had ceased to become an American citizen be rebutted. But the attorney general held that the object of the statute was to relieve the United States from the duty of protecting its citizens abroad after the lapse of a reasonable period, and that the presumption was rebuttable in other ways than by application to such officials, chief among which was a return to America. The opinion strongly indicates that the evidence presented by the record in the case at bar was enough to justify the court in finding and adjudging that Nelson did not expatriate himself by his residence in Denmark. He kept his land in the United States, he returned to look after it

in 1913, and he told his wife that he considered the United States the best country in the world, asking her to go there with him and declaring that he intended to retain his American citizenship. A fixed purpose to·terminate his allegiance to the United States was necessary, under the circumstances, to work a forfeiture of his citizenship. *State v. Jackson,* 79 Vt. 504. We have no difficulty in deciding that Chris Nelson was to his death a citizen of this country. Nor can we conclude otherwise than that his daughter Hertha was born a citizen of the United States, and so remains. Children of citizens of the United States who are born in foreign countries are citizens of the United States. The citizenship of the child is determined by that of the father, and though the latter reside in another country the child will be a citizen of this if the father has not forfeited or surrendered his allegiance thereto. *Wolff v. Archibald,* 14 Fed. 369; *Ware v. Wisner,* 50 Fed. 310; *State v. Adams,* 45 Ia. 99; 4 U. S. Comp. St., sec. 3963.

Turning our attention to Alvilda Nelson, the widow of the deceased and the mother of his child, and to the question of whether or not she inherited, it may be conceded that in order to retain her right to take and to hold by descent she should, under section 3961 of the federal statutes, *supra,* have registered before a United States consul within a year after the death of her husband. But there is nothing in the record to show affirmatively that she did not. If the plaintiff asserts the fact, the burden is upon him to prove it. *Buckley v. McDonald,* 33 Mont. 483. She became a citizen at the time that she married Chris Nelson. *United States v. Williams,* 173 Fed. 626. And we must so consider her at present, in the absence of proof to the contrary. It may be true that she will not be permitted to hold the disputed land because of the Nebraska statute above referred to, section 5687, Comp. St. 1922; but if by our law the same is ever escheated to the state it must be by appropriate proceedings and upon full compensation.

A third assignment of error is that the court erred in overruling the plaintiff's objection to the introduction of

any testimony, for the reason that the petition to vacate the judgment failed to state facts sufficient to constitute a defense, the appellant taking the position that neither under section 8590, nor section 9160, of the Compiled Statutes of 1922, could the first judgment of the court be set aside, and the defendants be let in to litigate. The former section provides for the setting aside of a judgment obtained upon service of summons by publication, where the defendants do not have actual knowledge of the pendency of the proceedings. On three grounds the appellant urges that the requirements of the statute were not observed: First, because there was no sufficient affidavit showing to the satisfaction of the court that defendants were without actual notice; second, because an answer was not tendered; third, because there was no proof adduced upon trial that the defendants did not have such notice.

As stated before, the application of the defendants to vacate the judgment was by way of petition. No affidavit, aside from said petition, was presented. The petition, however, was verified positively by I. J. Nisley, one of the attorneys for defendants and the next friend of the defendant Hertha Oman, a minor. The petition contains all of the essential averments of a jurisdictional affidavit, and, being verified positively, it would ordinarily be considered as performing the function of the affidavit required. But the objection is that the affidavit was not made by the defendant herself, but by her attorney, and that the latter failed to show that he had personal knowledge that the defendants were without notice. Usually, as the court said, in *Cass v. Nitsch,* 81 Neb. 228, the fact that a party had no actual notice of the pendency of an action in time to appear and defend is one of which he alone is cognizant, and such fact will best appear from the affidavit of the party himself. The maker of the affidavit, if not the party himself, must show in it that he had the means of knowing, and did know. In the cited case the affidavit which was considered was no more than upon information and belief. The sufficient cause for its condemnation was that it was not positively verified.

In view of this the additional expression employed approaches dictum. But, even as it is, the verification in the case at bar fairly meets the requirements of the rule, for it is not only positive, but it affirmatively states that the maker is the next friend of the defendant. This imports proximity and source of knowledge. It sufficiently sets forth the means by which the maker knew.

Because of these views, we believe and hold that the district court was justified in his ruling that the positively verified petition of the defendant was sufficient to perform the function of the statutory affidavit.

It is quite apparent, upon a perusal of the petition filed by the defendants, that the said petition contained every denial and every allegation necessary to a complete answer to the original petition filed by the plaintiff. The mere fact that it was designated as a petition, rather than an answer, is unimportant.

In the third place, the vacation of the decree and the opening of the case for trial must be held to be antecedent. to the trial itself, and dependent upon the affidavit and counter affidavits filed. "The adverse party, on the hearing of an application to open a judgment or order, as provided by this section, shall be allowed to present counter affidavits, to show that during the pendency of the action the applicant had notice thereof, in time to appear in court and make his defense." Comp. St. 1922, sec. 8590. And since the affidavit or petition contained the necessary averments to satisfy the court that the defendants were without actual notice of the pendency of the case upon which the original decree was entered, and the court found in favor of the defendants upon that point, it was unnecessary for the defendants to prove it in the trial of the case upon its merits.

It is also probable that the petition and proceedings of the defendants were sufficient to entitle them to relief under section 9160 of the statutes. But this we do not discuss, because it is unnecessary in view of what has already been said, and because to do so would unduly consume time and space.

Some question remains as to whether or not the defendant Alvilda Nelson should be allowed to recover her interest in the land in any event. The evidence shows that shortly before the death of Chris Nelson there was pending in the Nebraska courts a suit on his behalf involving a portion of said land claimed by one Johnson. It is quite plain from the testimony of Alvilda Nelson herself that she executed her deed of conveyance to the plaintiff, Carl Nelson, upon the understanding that he was to pay the costs of this litigation, and also that he was to hold her harmless from liabiltiy upon the contract of suretyship hereinbefore referred to. It is also clear that Nelson not only discharged his obligations in these respects, but paid her the sum of $660 on account of the execution and delivery of said deed. On the other hand, it appears that there were representations on the part of said Carl Nelson, through his brother Niels Nelson, that the land was of little or no value, when the fact was, as he well knew, that it was worth upwards of $5,000. Compared with this sum, the obligations assumed and the payments made by Carl Nelson were a mere bagatelle, amounting to considerably less than one-fifth of the value of the land. Such disparity between the consideration and the real value of the thing sold and conveyed is so great as to be a badge of fraud. And this, in connection with the fraudulent representations referred to, inclines the court to the same judgment that was rendered by the district court.

Error is assigned because the decree of the court was not supported by the evidence and was contrary to law, but the foregoing discussion covers the assignments so made.

The decree of the district court was right, and without error, and it is accordingly

AFFIRMED.

Note—See Aliens, 2 C. J. sec. 28; Citizens, 11 C. J. secs. 12, 18 (1926 Ann.) ; Judgments, 34 C. J. secs. 569, 570.